JAMES S. THOMSON
California SBN 79658
Attorney and Counselor at Law
732 Addison Street, Suite A
Berkeley, California 94710
Telephone: (510) 525-9123
Facsimile:  (510) 525-9124
Email: james@ycbtal.net

TIMOTHY J. FOLEY
California SBN 111558
Attorney at Law
1017 L Street, Number 348
Sacramento, California 95814
Telephone: (916) 599-3501
Email: tfoley9@earthlink.net

Attorneys for Defendant
JUSTIN GRAY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **Case No. 1:20-cr-00238-JLT-SKO** |
| Plaintiff, | ) ) | **JUSTIN GRAY'S MOTION FOR SEVERANCE AND MEMORANDUM IN SUPPORT OF MOTION** |
| vs. | ) ) | |
| JUSTIN GRAY, ET AL. | ) ) | Date: September 23, 2024 |
| Defendants. | ) ) | Time: 9:00 am |
| _____ | ) | Place: Courtroom 4; Hon. Jennifer Thurston |

TO THIS HONORABLE COURT, ASSISTANT UNITED STATES ATTORNEYS

STEPHANIE STOKMAN AND JAMES R. CONOLLY, ALL DEFENDANTS AND

THEIR COUNSEL OF RECORD:

Please take notice that on September 23, 2024 at 9:00 am before the Honorable

Jennifer L. Thurston, in Courtroom 4, United States District Court, 2500 Tulare Street,

Fresno, California 93751, Justin Gray, through his appointed counsel, will move and

hereby does move for severance from the other defendants in the above captioned matter.

This motion is brought pursuant to Rule 14 of the Federal Rules of Criminal

Procedure.  This motion is based on the accompanying Memorandum in Support of Justin

Gray's Motion for Severance, the pleadings and file in this matter, and such other

authorities and evidence as may be presented in any reply or supplemental briefing or at any hearing on this motion.

DATED: September 3, 2024                    Respectfully submitted,

                                            /s/ James S. Thomson

                                            /s/ Timothy J. Foley
                                            _____
                                            JAMES S. THOMSON
                                            TIMOTHY J. FOLEY
                                            Attorneys for JUSTIN GRAY

Justin Gray's Motion for Severance

**MEMORANDUM IN SUPPORT OF JUSTIN GRAY'S**

**MOTION FOR SEVERANCE**

At present, eleven defendants are charged in this proceeding.  Ten of the eleven, save only Justin Gray, are charged in Count One, the RICO conspiracy count.

Some of the other defendants in this multi-defendant, multi-count proceeding have unsuccessfully requested severance.  Doc #722, #818, #927, #1009.  Mr. Gray, however, is in a singular and unique posture: as noted, he is not charged in the RICO conspiracy count.

Accordingly, this motion to sever the proceedings against Mr. Gray is based on manifestly different grounds than those discussed in the previous motions, grounds unique to him.  The joinder of Mr. Gray into the RICO conspiracy trial would be so fundamentally prejudicial that it would violate his basic right to a fair judicial proceeding.

**I.      INTRODUCTION AND PROCEDURAL POSTURE**.

The latest, third superseding indictment[1] charges eleven different defendants with thirteen separate counts alleged against different combinations of the defendants.  Doc #1098.  The indictment includes a racketeering (RICO) conspiracy charge, allegations of murder in aid of racketeering, drug and firearm counts, and forfeiture allegations.

Mr. Gray is unique among the eleven co-defendants: he is not named in the foundational RICO conspiracy charge, Count One.[2]

Count One targets a racketeering enterprise, the Aryan Brotherhood (AB), and accuses the other ten defendants of a conspiracy lasting for years and involving murder,

---

[1] Although this matter was originally filed in November of 2020, Mr. Gray was not added to the case until the filing of the Superseding Indictment in September of 2022.  Doc #374.  Subsequently, on May 11, 2023, a Second Superseding Indictment was filed.  Doc #622.  The Third Superseding Indictment was filed on May 29, 2024.  Doc #1098.

[2] The other ten defendants are charged with participating in the RICO conspiracy.  It appears that two defendants, Kenneth Bash and Derek Smith, have reached an agreement with the government and intend to change their plea and resolve the case against them.  Doc #1261, #1276.

1  extortion, robbery, kidnapping, fraud, drug trafficking, and other criminal activities.  Doc

2  #1098, at 6-7.  The indictment lists 20 specific instances of alleged criminal activity,

3  beginning in 2015 and continuing through 2023, committed in furtherance of the

4  racketeering conspiracy.  *Id*., at 7-9.  Count One also includes 13 Special Sentencing

5  Factors listing serious criminal acts.  *Id*., at 9-14.

6        Mr. Gray is charged with two counts of murder in aid of racketeering in violation

7  of 18 U.S.C. §1959(a)(1), Count Two and Count Three.  The two homicides, of Victim-1

8  and Victim-2, occurred during a single incident on October 4, 2020, in Lomita,

9  California.  In addition to being absent from the allegations of Count One, Mr. Gray is not

10  charged in Counts Four through Thirteen.  None of the other nineteen instances of

11  racketeering criminal activity, cataloged in paragraph 20, nor the Special Sentencing

12  Factors, with the lone exception of the Lomita double shooting, involve Mr. Gray.

13        Trial is set for January 14, 2025.  Doc #916.

14        One of Mr. Gray's co-defendants, Kenneth Johnson, previously filed a motion to

15  sever, Doc #722, denied in an order filed on October 13, 2023.  Doc #818.  Another co-

16  defendant, Kenneth Bash, filed a motion to sever, Doc #927, denied in an order filed on

17  March 19, 2024.  Doc #1009.  Those denials rested heavily on the observation that Mr.

18  Johnson and Mr. Bash were charged in the RICO conspiracy count.[3]  With regard to Mr.

19  Gray, of course, the situation is quite different.

20  //

21  //

22  //

23  //

24

25     [3]  As the Court noted in the order denying Mr. Bash's motion: "courts agree that 'a

26  joint trial is particularly appropriate where the co-defendants are charged with conspiracy,
   because the concern for judicial efficiency is less likely to be outweighed by possible

27  prejudice to the defendants when much of the same evidence would be admissible against

28  each of them in separate trials.'"  Doc #1009, at 4.

Justin Gray's Motion for Severance

## II.     LEGAL STANDARDS

Under Federal Rule of Criminal Procedure 14, the court may order a severance of the defendants' trials if "a consolidation for trial appears to prejudice a defendant."[4] *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  Generally, there is a preference in the federal system for joint trails, which can promote efficiency.  *Id.*

Where there is a significant danger of undue and unfair prejudice to a defendant, however, severance should be granted.  The *Zafiro* opinion gives several examples of such a situation.  Severance should be granted "if there is a serious risk that a joint trial would compromise a specific trial right" and where joinder would "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 538.

In addition, spillover prejudice from the admission of evidence suggestive of a defendant's guilt but admissible only against a co-defendant can improperly prejudice a defendant, render a trial fundamentally unfair, and require severance.  *Zafiro,* 506 U.S. at 539; *United States v. Davidson*, 936 F.2d 856, 861 (6th Cir. 1991).  Further, "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Zafiro*, 506 U.S. at 539.

In supporting a request for severance under Rule 14, the burden is on the requesting defendant to show clear, manifest, or undue prejudice from a joint trial. *United States v. Polizzi*, 801 F.2d 1543, 1554 (9th Cir. 1986).  In addressing a request for severance, this court must weigh, on a case by case basis, "the advantage and economy of a joint trial to the administration of justice against possible prejudice to a defendant" and, if a joint trial is manifestly and unfairly prejudicial, grant the severance.  *United States v. Donaway*, 447 F.2d 940, 943 (9th Cir. 1971).

---

[4] Mr. Gray assumes, without conceding, that the joinder of defendants is permissible under Rule 8(b).

Justin Gray's Motion for Severance

1    **III.    SEVERANCE FOR DEFENDANT GRAY IS REQUIRED.**

2    There will be clear, manifest, undue prejudice damaging to Mr. Gray's interests if

3    he is submitted to a joint trial with the co-conspirator defendants where the conspiracy

4    involves numerous counts, criminal activity, and harmful evidence legally irrelevant to

5    Mr. Gray's behavior.

6    As discussed below, the circumstances here demonstrate that he will be denied a

7    fundamentally fair proceeding if he is forced into a joint trial.  See, e.g., *United States v.*

8    *Green*, __ F.4th __, 2024 WL 3945118 (3rd Cir. 2024); *United States v. Davidson*, 936

9    F.2d 856, 860-61 (6th Cir. 1991).

10    **A.    Mr. Gray is Not a Co-Conspirator and Not Charged in the RICO Conspiracy Count.**

11

12    As the government (and the Court, in the previous orders) has pointed out,

13    severance in a complex conspiracy prosecution would result in significant judicial

14    inefficiency and the duplicative expending of resources.  The government has noted that a

15    division of the co-conspirators would result in "separate trials where the same evidence

16    demonstrating the Aryan Brotherhood's membership, command structure, codes of

17    conduct, purposes, and pattern of racketeering activity would have to be introduced. . ."

18    Doc #1264, at 5.

19    But this is not true where Mr. Gray is concerned.  While some evidence would

20    necessarily be introduced to show the relationship between the Lomita shootings and

21    "racketeering activity", in order to demonstrate the violation of 18 U.S.C. § 1959, the

22    breadth and extent of the AB evidence presented would be minimal compared to the

23    extensive showing contemplated in proving the conspiracy charged in Count One of the

24    indictment.[5]

25    _____

26    [5] Further, should the conspiracy trial proceed first, many uncontested matters will
naturally be stipulated to by the parties, resulting in even fewer witnesses at a subsequent

27    trial of Mr. Gray.  Although in the civil context, *see, e.g., Hernandez v. Philip Morris,*

28    486 F.3d 1, 5 (1st Cir. 2007) ("Stipulations eliminate the need for proving essentially

1    In the recent *Green* opinion, the Third Circuit noted the significant difference

2  between joinder in a conspiracy trial and joinder outside of a conspiracy.  "[G]rouping

3  defendants who are part of a single conspiracy into a single trial makes intuitive sense.

4  Because a conspirator's crime is an agreement to commit another crime, trying together

5  all the parties to that agreement is both efficient and a better means of presenting the

6  scope of a criminal conspiracy to a jury."  *United States v. Green*, 2024 WL 3945118, at

7  *7.  On the other hand:

> . . . what makes conspiracies amenable to joint trials is what can make substantive charges against individuals comparatively suited to separate trials. . . . [T]he possibility of prejudice is heightened because a co-defendant's evidence may have little prejudicial effect on a defendant's guilt in agreeing to commit an offense, yet that same evidence may be significantly more harmful as to a defendant's guilt in committing a substantive offense. See *Zafiro*, 506 U.S. at 539. . . [T]he jury might be more likely to believe that one defendant committed a substantive offense merely because his co-defendant – but not co-conspirator – committed a crime.

14  2024 WL 3945118, at *7-8.

15    The government's recent opposition to a request by co-defendant Bannick for trial

16  groupings characterized the request as "essentially a motion to sever" and argued that "a

17  joint trial of Bannick and his co-defendants is appropriate *because they are charged with*

18  *a RICO conspiracy*."[6]  Doc #1264, at 5-6 (emphasis supplied).  Again, ten co-defendants

19  are, but Mr. Gray is not.

---

uncontested facts, thus husbanding scarce judicial resources.  Since stipulations are important to the efficient and expeditious progress of litigation in the federal courts, parties are encouraged to stipulate as to factual matters."); *Waldorf v. Shuta*, 142 F.3d 601, 616 (3d Cir. 1998) ("In general, courts encourage parties to enter into stipulations to promote judicial economy by narrowing the issues in dispute during litigation."); see also California Rules of Court, Rule 3.724(3).

[6] The Court as well, in the recent trial confirmation hearing on August 26, observed that the hurdle for assigning trial groupings in this matter was the conspiracy count.

Justin Gray's Motion for Severance

**B.    Prejudicial and Inflammatory Evidence Will Be Admitted in a Joint Trial, Unfairly Harming Mr. Gray's Interests.**

Mr. Gray, as noted, is accused of a role in the two homicides alleged in Count Two and Count Three.  But he is not part of the RICO conspiracy, and, other than that single incident, not involved in the numerous violent and criminal incidents set forth as acts committed in furtherance of the racketeering conspiracy, special sentencing factors relating to Count One, or separate counts.

The various violent criminal acts listed in the indictment that the government apparently will prove at trial that *do not involve Mr. Gray* include the following:

1.    The murder of Victim-10 on February 2, 2022.  Indictment, Count Four, Sentencing Factor 7, Count One.

2.    The murder of Victim-11 on March 8, 2022.  Indictment, Count Five, Sentencing Factor 8, Count One.

3.    The murder of Victim-12, also on March 8, 2022.  Indictment, Count Six, Sentencing Factor 9, Count One.

4.    The murder of Victim-5 on August 12, 2015.  Indictment, Count Seven; Para. 20(a), Sentencing Factor 4, Count One.

5.    The conspiracy to murder Victim-3 in October of 2020.  Indictment, Count Eight, para. 20(k), Sentencing Factor 3, Count One.

6.    The order to kill and killing of Victim-13 on January 24, 2016.  Indictment, para. 20(b); Sentencing Factor 11, Count One.

7.    The ordered stabbing of Victim-8 in 2020.  Indictment, para. 20(c); Sentencing Factor 5, Count One.

8.    The conspiracy to murder Victim-15 in 2020.  Indictment, para. 20(e); Sentencing Factor 12, Count One.

9.    The conspiracy to rob, robbery and beating of Victim-6 in 2020.  Indictment, para. 20(g).

Justin Gray's Motion for Severance

10. The conspiracy to commit arson in September of 2020, Victim-7. Indictment, para. 20(i).

11. The conspiracy to commit a robbery in Oregon on November 19, 2020. Indictment, para. 20(l).

12. The conspiracy to assault, assault and kidnapping of Victim-17 in 2022. Indictment, para. 20(m).

13. The conspiracy to rob, assault of Victim-14 in 2022. Indictment, para. 20(o).

14. The conspiracy to murder Victim-16 in 2022-23. Indictment, para. 20(t), Sentencing Factor 13, Count One.

Added to these instances of violent criminal conduct, the indictment also indicates that the government intends to introduce evidence of the possession and distribution of major amounts of methamphetamine, heroin, and Fentanyl by the other defendants. Counts Nine, Ten, Eleven, para. 20(h), 20(q), 20(s), Sentencing Factors 6 and 10, Count One. And the government also intends to introduce evidence of the use of firearms in relation to drug trafficking (Counts Twelve, Thirteen) and mail fraud (Indictment para. 20(d), 20(f), 20(n)).

Thus, evidence relating to four other murders, four additional conspiracies (or directives) to murder, plus an attempted arson, at least two robberies, a beating, a stabbing, episodes of drug distribution, mail fraud, and firearm use, all relevant to the co-defendants and charged co-conspirators but none involving Mr. Gray, are to be introduced in the joint trial. Realistically: regardless of any limiting instructions, this avalanche of prejudicial evidence would destroy any possibility that a jury could weigh the evidence specifically concerning Mr. Gray in a fair manner. The idea that a jury would be able to resist the "spillover" effect of such a presentation is unrooted in reality.

Severance is required in a situation where the nature of the extraneous evidence, only related to the co-defendants, is so harmful and so inflammatory that there is a "serious risk" that the jury would be unable to properly compartmentalize that evidence.

1   *United States v. Baker*, 98 F.3d 330, 335 (8th Cir. 1996); see *United States v. York*, 2017

2   WL 4237112, at *9 (E.D. Cal. Sept. 22, 2017) ("Severance is reserved for situations such

3   as when evidence that the jury should not consider against a defendant and that would not

4   be admissible if a defendant were tried alone is admitted against a co-defendant. . .")

5   Both the presumption of innocence and fundamental due process would be sacrificed in

6   such a situation.  *Davidson*, 936 F.2d at 861.  The malignant evidence unrelated to Mr.

7   Gray but involving violent, criminal acts would destroy the opportunity for Mr. Gray to

8   receive a fair trial before an untainted jury.

9       **C.      The Circumstances Demonstrate an Intolerable Disparity of Evidence.**

10      In addition to the type of evidence unrelated to Mr. Gray that the prosecution will

11  present, there is the sheer amount of this evidence.  The indictment on its face presents a

12  disproportionate number of allegations against the other defendants.  Such a disparity of

13  evidence, especially in light of the complexity of the RICO conspiracy evidence, requires

14  separate trials.

15      Severance is appropriate "when the charges brought against the defendants or the

16  weight of the evidence supporting each charge is wholly disparate or disproportionate."

17  *United States v. Vasquez-Velasco*, 15 F.3d 833, 846 (9th Cir. 1994).  For example, in

18  *United States v. Donaway*, the Ninth Circuit reversed a conviction, holding that the denial

19  of the severance motion was error because "[the] government's case covered more than

20  2300 pages of transcript, less than 50 of which were relevant to Donaway."  *Vasquez-*

21  *Velasco*, 15 F.3d at 846; see *Donaway*, 447 F.2d at 943.  Similarly, in *United States v.*

22  *Tarango*, 396 F.3d 666, 675 (5th Cir. 2005), the court upheld the granting of a new trial

23  for a defendant whose trial was characterized by the admission of an enormously

24  disproportionate amount of evidence aimed at an absent co-defendant.

25      In *United States v. Mardian*, 546 F.2d 973 (D.C.Cir.1976), the court reversed the

26  defendant's conviction because he had been tried jointly with three of the principal

27  members of a  conspiracy, when each co-defendant played a much more substantial role

28  in the crime over a far longer period of time.  The court concluded that the "dangers of

transference of guilt" are significant in such cases. *Mardian*, 546 F.2d at 977. And in *United States v. Sampol*, 636 F.2d 621 (D.C.Cir. 1980), the court reversed a conviction due to the "gross disparity in the quantity and reliability of the testimony against the respective joint defendants." *Id.* at 647. "[W]hen the evidence against one or more of the defendants is 'far more damaging' than evidence against the party seeking severance" separate trials are mandated. *Id.* at 645; see also *Tarango*, 396 F.3d at 675 (A new trial is warranted where "the *overwhelming* nature of the Government's case focused exclusively on a conspicuously absent defendant," and not Tarango.)

These opinions reflect reality. When there is "a great disparity in the weight of the evidence against the defendants," the danger "that guilt felt by the jury to adhere to some of the defendants might 'rub off' on others" becomes too great to allow a joint trial. *Sampol*, 636 F.2d at 645; see *United States v. Kelly*, 349 F.2d 720, 759 (2nd Cir. 1965). Joinder is improper, and unfair, when a defendant's role in a trial is minimal in relation to the other defendants.

The allegations in the indictment here present a prosecution in which a massively disproportionate amount of evidence will be devoted to crimes and criminal activity that do not involve Mr. Gray. Such a disparity of evidence, and the spillover effect of the admission of such evidence, creates a situation where even a fair minded jury will not be able to distinguish the proof as it relates to Mr. Gray. In such a situation, severance is necessary.

## IV.    CONCLUSION

Judicial efficiency is a relevant consideration. But "no defendant should ever be deprived of a fair trial because it is easier or more economical for the government to try several defendants in one trial rather than in protracted multiple trials." *United States v. Boscia*, 573 F.2d 827, 833 (3d Cir. 1978).

A joint trial in this matter would deprive Mr. Gray of his fundamental right to a fair trial in front of an untainted jury. A joint trial involving the admission of prejudicial evidence inadmissible in a separate trial and the shear disparity of evidence demonstrated

by the allegations in the indictment would result in a violation of due process rights under the Fifth Amendment and the right to present a defense before an unbiased jury under the Sixth Amendment.

For the forgoing reasons, counsel for Mr. Gray request that the Court grant this motion for severance and separate Mr. Gray's case from the other defendants.

DATED: September 3, 2024                    Respectfully submitted,

                                            */s/ James S. Thomson*

                                            */s/ Timothy J. Foley*

                                            _____
                                            JAMES S. THOMSON
                                            TIMOTHY J. FOLEY
                                            Attorneys for JUSTIN GRAY

Justin Gray's Motion for Severance