UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JUSTIN GRAY, et al,<br><br>    Defendants. | Case No. 1:20-CR-00238-JLT-SKO<br><br>ORDER GRANTING MR. GRAY'S MOTION FOR SEVERANCE<br><br>(Doc. 1283) |

Justin Gray moves to sever his trial from the remaining defendants. He argues that because he has not been charged in the RICO count, the bulk of the evidence presented at the trial will be unrelated to him and this would be "fundamentally prejudicial [such] that it would violate his basic right to a fair judicial proceeding." (Doc. 1283 at 3) For the reasons set forth below, the motion is **GRANTED**.

I.   **Background**

The government alleges that the "Aryan Brotherhood is a white, race-based gang formed in the California prison system in about 1964 by white inmates who wanted to gain power and authority in prison." Doc. 1098 at 2. The AB "is a criminal organization whose members and associates engaged in drug trafficking, theft, and acts involving murder, extortion, burglary, robbery, and assault." *Id*. at 2. According to the government, the purpose of the AB is to control illegal activities within the California prison system, to enrich its leaders, members, and

associates, to preserve, protect and expand the reach of the AB's power and to threaten and use violence to "keep victims in fear of the AB." (Doc. 1098 at 4.) The Aryan Brotherhood does this by authorizing and condoning members and associates to commit criminal acts, by engaging in acts, such as murder, assault, "drug trafficking, theft, robbery, and extortion." *Id*.

In this action, the government has charged Mr. Gray in Counts 2 and 3 with murder in aid of racketeering. (Doc. 1098 at 14-15) The government alleges that he murdered, and aided and abetted the murder of, Victim 1 and Victim 2, on October 4, 2020. *Id*. Along with Mr. Gray, the government asserts that defendants Johnson, Clement, and Bannick are complicit in these murders. *Id*. In each of these counts, the government alleges that "[t]he AB enterprise, through its members and associates, engaged in racketeering activity as defined in 18 U.S.C. Sections 1959(b)(l) and 1961(1), that is, acts involving murder, extortion, and arson in violation of the California Penal Code, acts involving robbery in violation of the California Penal Code, the Alabama Criminal Code, and the Oregon Revised Statute, multiple acts indictable under 18 U.S.C. §§ 1028, 1341, and 1343, and multiple offenses involving drug trafficking in violation of 21 U.S.C. §§ 841, 843, and 846." *Id*. The government contends that Mr. Gray and his codefendants, murdered Victim 1 and Victim 2 "for the purpose of gaining entrance to and maintaining and increasing position in the AB, an enterprise engaged in racketeering activity. . ." *Id*.

In Count 1, the government alleges that six of the defendants, who are set for trial with Mr. Gray, and four others, conspired to participate in a racketeering enterprise. (Doc. 1098 at 5-14) In support of the RICO count, the government alleges that the racketeering activities include multiple murders, extortion, robbery, fraud, identity theft, drug trafficking and arson. *Id*. at 6. Toward this end, the government asserts that the murders of Victims 1 and 2, among others, were acts committed in furtherance of the RICO conspiracy. *Id*. at 8. At the upcoming trial, the government will also bear the burden of proving Counts Four (the murder of Victim 10) and Counts Five and Six, which allege the double murder of Victims 11 and 12. (Doc. 1098) Each of these other counts involve one or two of the defendants who are also charged in the counts

brought against Mr. Gray.[1]

**II.     Analysis**

The Court starts its analysis with the presumption that a joint trial in this case is the "preference in the federal system." [2] *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Id*. (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)). In this context, Federal Rule of Evidence 14 provides for the severance of charges or defendants if joinder "appears to prejudice a defendant or the government" and permits separate trials of counts or defendants, or "any other relief that justice requires."

The standard for showing prejudice is high. *United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994). When the government has properly indicted defendants jointly, a joint trial is the "preference in the federal system." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Id*. (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)). A showing of some prejudice is not enough. Rather, the "court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, at 539, emphasis added. Serious risk of harm is shown,

> . . . when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. See Kotteakos v. United States, 328 U.S. 750, 774-775, 66 S.Ct. 1239, 1252-1253, 90 L.Ed. 1557 (1946). Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. See Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial.

"The burden is on the defendant to show 'clear,' 'manifest,' or 'undue' prejudice from a joint

---

[1] Count 4 is brought against defendants Weaver and Clement. Counts 5 and 6 are brought against defendants Clement, Bannick and Perkins.
[2] There is no dispute that the counts are properly joined under Rule 8. (Doc. 134 at 2)

3

trial." *United States v. Mikhel*, 889 F.3d 1003, 1046 (9th Cir. 2018) (quoting *United States v. Polizzi*, 801 F.2d 1543, 1553–54 (9th Cir. 1986)). A defendant,

> must also show violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant.

*United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980).

### A. The VICAR murders require enterprise evidence to be presented

Common to the RICO and VICAR counts is the requirement that the government prove that there was a racketeering enterprise and that this enterprise engaged in racketeering activity. This evidence is separate from the requirement that the government present evidence that the VICAR actor was motivated to commit the act to join the enterprise or to improve his position in it. As to Count 1, the government must also prove the enterprise engaged in a pattern of activity.

To establish an enterprise, the government must prove beyond a reasonable doubt that there were a group of people: (1) associated for a common purpose of engaging in a course of conduct; (2) that the association of these people was an ongoing formal or informal organization, and (3) the group was engaged in or had an effect upon interstate or foreign commerce. (Ninth Circuit Model Instruction #18.9; 18 U.S.C. § 1959) To establish a racketing activity, the government must prove specific criminal acts were committed by one or more members of the enterprise. (Ninth Circuit Model Instruction #18.10; 18 U.S.C. § 1959(b)(1); *United States v. Banks*, 514 F.3d 959, 968 (9th Cir. 2008).)

Mr. Gray recognizes that the crimes with which he is charged require the government to present evidence connecting the murders with the racketeering activity. (Doc. 1283 at 6) He argues, however, that this evidence "would be minimal compared to the extensive showing contemplated in proving the conspiracy charged in Count One of the indictment." *Id*. Though Mr. Gray's contends that the enterprise evidence will be reduced at a trial solely involving him, the number of defendants involved in the trial does not necessarily dictate the amount or type of evidence needed to prove either the "enterprise" or the "racketeering activity" elements.

Mr. Gray also notes that if he were tried alone, the evidence tying each of the co-

1 defendants to the conspiracy need not be presented. This does not mean, however, that evidence
2 related to other conduct by the relevant codefendants would be omitted. Indeed, at the hearing,
3 the government expressed that it intended to present significant evidence about the co-defendants
4 charged in Counts 2 and 3 to make sense of why Mr Gray would commit murder at the behest of
5 people who were in prison and who may never leave prison. The Court cannot disagree that this
6 approach may be warranted. If this happens, this evidence will duplicate some of the evidence
7 that will be presented at the trial set in January 2025.

8       The government agrees, however, that if it proceeds as described above, it will not need to
9 present the same quantum of evidence in a trial limited to Mr. Gray. Rather, a pared-down version
10 of this evidence should suffice. Thus, though it is indisputable that a trial proceeding only as to
11 Mr. Gray will result in duplication of evidence, the extent of this duplication is relatively limited
12 even if it is not insubstantial.

13       **B.    The prejudice to Mr. Gray is a significant consideration**

14       Counts 2 and 3 allege that defendants Gray, Clement, Johnson and Bannick acted to
15 murder Victims 1 and 2 for the purpose, implicitly, of assuring the ongoing existence of the AB
16 and, explicitly, to assure and/or improve their positions in the enterprise or to gain membership in
17 it. (Doc. 1098 at 14-15) The indictment alleges that these defendants acted in concert as principals
18 under California Penal Code § 31. This provision of the Penal Code is akin to an uncharged
19 conspiracy. *Kumar v. Yates*, 2011 WL 2295030, at *21 (E.D. Cal. June 8, 2011), collecting cases.
20 Thus, as Mr. Gray admits (Doc. 1304 at 2), ideally, the Counts should be tried in a single trial at
21 which all of the defendants are present. "[A] joint trial is particularly appropriate where the co-
22 defendants are charged with conspiracy, because the concern for judicial efficiency is less likely
23 to be outweighed by possible prejudice to the defendants when much of the same evidence would
24 be admissible against each of them in separate trials." *United States v. Fernandez*, 388 F.3d 1199,
25 1242 (9th Cir. 2004), as modified, 425 F.3d 1248 (9th Cir. 2005).

26       On the other hand, the fact that Penal Code § 31 acts like a conspiracy charge, does not
27 join Mr. Gray to the overall RICO conspiracy charged in Count 1, though it could have done.
28 Unlike the defendants who *are* charged under Count 1—as to whom much more extensive

evidence related to the AB may be introduced without getting into the realm of undue or manifest prejudice—Mr. Gray's role in this case as alleged, though extraordinarily serious, is relatively limited. Though the government need not prove all of the predicate acts alleged in Count 1, it is undeniable that the full scope and extent of that evidence would not be allowed if Mr. Gray were tried alone. "The inevitable consequence of any joint trial is that the jury will become aware of evidence of one crime while considering a defendant's guilt or innocence of another crime." *United States v. Decoud*, 456 F.3d 996, 1009 (9th Cir. 2006). However, only where the "risk of prejudice is high," is the court "more likely" to consider severance but often, "less drastic measures, such as limiting instructions," are sufficient. *Id*. Due to the volume of evidence that will be admissible and necessary at the joint trial and the likelihood that the evidence presented will be graphic and emotionally jarring, the Court concludes that Mr. Gray would suffer a high risk of prejudice if he were tried with the other six defendants. Though Mr. Gray's alleged conduct, if proved, demonstrates the highest level of culpability as to Counts 2 and 3, nothing in the indictment suggests culpability in the operation of the enterprise otherwise. *Zafiro,* at 539.

In general, the Court agrees that limiting instructions and clear verdict forms alleviates the risk of prejudice in trials, such as the one upcoming, where the defendants are alleged to have been involved in a RICO conspiracy. *United States v. Fernandez*, 388 F.3d 1199, 1244 (9th Cir. 2004), as modified, 425 F.3d 1248 (9th Cir. 2005). Here, however, where the government has not alleged that Mr. Gray was a part of the the overarching conspiracy, the Court does not find that limiting instructions can mitigate the unfair prejudice which will certainly result from the presentation of the RICO conspiracy.

**ORDER**

The Court finds that there is a high likelihood that the jury will confuse the evidence or wrongly assume Mr. Gray is guilty based upon evidence presented as to Count 1. Thus, Mr. Gray's motion to sever is **GRANTED**.

Within 14 days, counsel **SHALL** meet and confer to identify a convenient trial date and to propose a schedule of dates for the pretrial activities. The current pretrial schedule order (Doc. 1286) no longer applies to Mr. Gray, unless the parties agree that it should and propose a

schedule, which adopts those dates.

IT IS SO ORDERED.

Dated: __**October 29, 2024**__         _____
                                                  UNITED STATES DISTRICT JUDGE